UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VINTON P. FROST,<br>　　　　Plaintiff,<br>　　v.<br>UNITED STATES DEPARTMENT OF JUSTICE,<br>　　　　Defendant. | Case No. 17-cv-01240-JCS<br><br>**ORDER RE CROSS-MOTIONS FOR SUMMARY JUDGMENT AND MOTION FOR DEFENDANT'S CERTIFICATION**<br><br>Re: Dkt. Nos. 65, 84, 89 |

## I.　INTRODUCTION

On November 17, 2016, Plaintiff Vinton Frost submitted requests under the Freedom of Information Act ("FOIA"), 5 U.S.C. §§ 552 *et* seq., for documents about him in the possession of the Office of the Attorney General ("OAG") and the Federal Bureau of Investigation ("FBI") (collectively, "FOIA Requests"). The OAG conducted a search and found no responsive records. The FBI's search uncovered eighty-seven pages of responsive records, of which forty were released to Plaintiff, with certain names redacted from thirty-seven of those pages. The FBI withheld another forty-seven pages on the basis that they were duplicates of the released documents. In this action, Frost challenges the adequacy of the responses to his FOIA Requests. Presently before the Court are the parties' cross-motions for summary judgment. Also pending is a Motion for Defendant's Certification.

The Court finds that the motions are suitable for determination without oral argument and therefore **vacates the motion hearing set for April 20, 2018** pursuant to Civil Local Rule 7-1(b).[1] For the reasons stated below, the Court GRANTS in part Defendant's Motion for Summary

---

[1] The Court regrets that it is unable to accommodate Defendant's request to keep the hearing on calendar to allow a certified law student present oral arguments on the pending motions.

1  Judgment, DENIES in part Plaintiff's Motion for Summary Judgment, and HOLDS IN
ABEYANCE the question of whether summary judgment is warranted in favor of either party as
to the adequacy of the FBI's search for responsive records. The Court DENIES Plaintiff's Motion
for Defendant's Certification.[2]

## II. THE MOTION FOR CERTIFICATION

In the Motion for Defendant's Certification, Plaintiff asks the Court to require that Defendant certify that the documents produced by the FBI (attached as Exhibit F to the Hardy Declaration) are a "true and correct representation of Plaintiff's complaints and reports provided to the F.B.I.'s San Francisco Office." As discussed further below, FOIA requires that an agency conduct a search that is reasonably calculated to uncover all relevant documents. Compliance is determined based on the reasonableness of the search effort and not on whether every responsive document is produced. *See White v. U.S. Dep't of Justice*, 840 F. Supp. 2d 83, 88 (D.D.C. 2012), aff'd sub nom. *White v. U.S. Dep't of Justice Exec. Office for U.S. Attorneys*, No. 12-5067, 2012 WL 3059571 (D.C. Cir. July 19, 2012) ("The question is not whether responsive documents may exist, but whether the search itself was adequate."). Because Plaintiff has pointed to no authority that suggests Defendant is obligated under FOIA to certify that every responsive document has been produced, the Court DENIES Plaintiff's request.

## III. THE SUMMARY JUDGMENT MOTIONS

### A. BACKGROUND

#### 1. OAG Request

In his request to the OAG ("OAG Request"), Plaintiff stated that he was "seeking all documents received and/or produced by the Office of the Attorney General pertaining to [himself], [his] person." Declaration of Daniel R. Castellano ("Castellano Decl.") ¶ 3 & Ex. A. The Office of Information Policy ("OIP"), which responds to FOIA requests on behalf of the OAG, *see* Castellano Decl. ¶ 1, sent Plaintiff a letter acknowledging receipt of his request on December 21, 2016, and initiated a search for responsive records on that date. *Id*. ¶¶ 4, 19 & Ex. B. OIP

---
[2] The parties have consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c).

2

provided its final response in a letter dated March 16, 2017. *Id.* ¶ 7 & Ex. E. The letter stated that "a search has been conducted in the Office of the Attorney General, as well as the electronic database of the Departmental Executive Secretariat, which is the official records repository for the Office of the Attorney General, and no records responsive to your request were located." *Id.*, Ex. E. Plaintiff appealed the response administratively in two administrative appeals and a final decision denying the appeals was issued on April 28, 2017. *Id.* ¶¶ 11, 13, 14 & Exs. F, H, I.

### 2. FBI Request

Like his OAG Request, Plaintiff's request to the FBI sought "copies of all documents pertaining to [him], [his] person." Declaration of David M. Hardy ("Hardy Decl.") ¶ 5 & Ex. A. The FBI responded to the request on November 30, 2016, informing Plaintiff that it had conducted a search of its Central Records System ("CRS") and was "unable to identify main file records responsive to" his request. *Id.* ¶ 6 & Ex. B. The letter stated that if Plaintiff could "provide additional information pertaining to the subject which [he] believe[d] was of investigative interest" to the FBI, it would conduct an "additional search." *Id.* The FBI also informed Plaintiff in the letter that its response "neither confirm[ed] nor denie[d] the existence of Plaintiff's name on any watchlists." *Id.*

On December 9, 2016, Plaintiff sent a letter to OIP stating that he had been "reporting suspected crimes against [him] to the San Francisco Office of the FBI for a period of almost three years." *Id.*, Ex. C. According to Plaintiff, these included reports about: 1) a possible assault and battery against him in Park City, Utah in 2007; and 2) alleged malpractice and financial fraud against Plaintiff by attorney Stanley Hopkins in 2003. *Id.* Plaintiff reiterated his request for "copies of all documents pertaining to me, my person, Vinton ('Vinny') Frost, especially those dated from January 1, 2013 to today's date." *Id.* He also requested that the FBI expedite its response because the documents he sought were relevant to a pending civil case in this Court, Case. No. 16-5883. *Id.*

Plaintiff's December 9, 2016 letter was construed as an administrative appeal, which was denied on March 24, 2017. *Id.*, Ex. E. The denial letter stated, *inter alia*, that the search of the main file records constituted an adequate search and that Plaintiff's letter sought "additional

3

records that [he] did not originally request." *Id*. The letter stated further that to the extent Plaintiff now sought documents related to "malpractice and financial fraud involving a third party," Plaintiff "may wish to submit a new FOIA request to the FBI." *Id*. The request for an expedited appeal was denied as moot. *Id*.

The FBI conducted an additional search on August 17, 2017. *Id*. ¶ 21. That search turned up eighty-seven documents, of which forty-seven were duplicates. *Id*., Ex. F. On September 20, 2017, the FBI produced to Plaintiff three pages in their entirety and thirty-seven pages from which the names of third parties and FBI agents and staff were redacted on the basis that they were exempt from disclosure under FOIA exemptions (b)(6)[3] and (b)(7)(C).[4] *Id*. It also invoked Exemption (b)(7)(E)[5] and Exemption (j)(2) of the Privacy Act in support of its refusal to confirm or deny whether Plaintiff's name was on any watchlists (the so-called "*Glomar* response").[6] *See*

---

[3] Section (b)(6) exempts from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6).

[4] Section (b)(7)(C) exempts from disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C).

[5] Section (b)(7)(E) exempts from disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . (E) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E).

[6] 5 U.S.C. § 552a(j)(2) permits an agency to promulgate rules exempting disclosure of "any system of records" that is:

> maintained by an agency or component thereof which performs as its principal function any activity pertaining to the enforcement of criminal laws, including police efforts to prevent, control, or reduce crime or to apprehend criminals, and the activities of prosecutors, courts, correctional, probation, pardon, or parole authorities, and which consists of (A) information compiled for the purpose of identifying individual criminal offenders and alleged offenders and consisting only of identifying data and notations of arrests, the nature and disposition of criminal charges, sentencing, confinement, release, and parole and probation status; (B) information compiled for the purpose of a criminal investigation, including reports of informants and investigators, and associated with an identifiable individual; or (C) reports identifiable to an individual compiled at any stage of the process of enforcement of the criminal laws from arrest or indictment through release from supervision.

4

*id.*, Ex. E. It did not produce the duplicates. *Id*.

### 3. Motions

Defendant United States Department of Justice ("DOJ") brings a motion for summary judgment asking the Court to hold as a matter of law that it conducted searches that were "reasonably calculated to uncover all relevant documents" with respect to both the FBI search and the OIP search. Docket No. 66 ("Defendant's Motion") at 8 (citing *Hamdan v. U.S. Dep't of Justice*, 797 F.3d 759, 770 (9th Cir. 2015)). It further seeks summary judgment that: 1) all of the redactions of the documents produced in response to the FBI Request were proper under the FOIA exemptions it invoked; and 2) the FBI's *Glomar* response was proper. *Id*. at 10-16.

In his opposition and cross-motion, Plaintiff contends there are material disputes of fact as to the adequacy of the searches that were conducted in response to both of his FOIA Requests. Docket No. 84 ("Plaintiff's Motion") at 1-4. He asks the Court to deny Defendant's Motion or defer ruling on it under Rule 56(d) of the Federal Rules of Civil Procedure and to order targeted discovery and more detailed declarations from DOJ affiants to establish whether the searches were adequate. *Id*.

In his briefs, Plaintiff does not challenge Defendant's assertion that the redactions of certain names from the documents produced in response to the FBI Request were proper under various FOIA exemptions.[7] Nor does he argue that the FBI's *Glomar* response was improper.[8]

---

[7] The Ninth Circuit has found in the FOIA context that "FBI agents have a legitimate interest in keeping private matters that could conceivably subject them to annoyance or harassment," including their involvement in investigations, and that this privacy interest is stronger for lower level employees within the agency. *Lahr v. Nat'l Transp. Safety Bd*., 569 F.3d 964, 977 (9th Cir. 2009) (internal quotations and citations omitted). Likewise, third parties who have cooperated with the FBI in an investigation are likely to have a strong privacy interest in that information. *See U.S. Dep't of State v. Ray*, 502 U.S. 164, 177 (1991). The FBI has provided a declaration establishing that the records that were produced to Plaintiff were compiled for a law enforcement purpose and attesting to the privacy interests of the individuals whose names were redacted. *See* Hardy Decl. ¶¶ 32-39. In light of the presumption that the Hardy Declaration was offered in good faith and Plaintiff's failure to challenge these redactions, the Court grants summary judgment in favor of Defendant that the redactions were proper under 5 U.S.C. § 552(b)(6) and (b)(7)(C).

[8] Courts have upheld *Glomar* responses where the agency has supplied a declaration showing that the records or information at issue was "collected for law-enforcement purposes" and its disclosure would reveal "guidelines" or "techniques and procedures for law enforcement investigations or prosecutions" that "could reasonably be expected to risk circumvention of the law." *See* 5 U.S.C. § 552(b)(7)(E); *Kalu v. Internal Revenue Serv*., 159 F. Supp. 3d 16, 22 (D.D.C. 2016). The Hardy Declaration claims, with reasonably specificity, that the FBI's *Glomar*

**B. ANALYSIS**

**1. Legal Standards Under FOIA**

FOIA "was enacted to facilitate public access to Government documents." *Lahr v. Nat'l Transp. Safety Bd.*, 569 F.3d 964, 973 (9th Cir. 2009) (internal quotation marks omitted). Congress's intention in enacting FOIA was to "ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed.'" *Id.* (quoting *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989) (internal quotation marks omitted)). Thus, FOIA "provides public access to official information 'shielded unnecessarily' from public view and establishes a 'judicially enforceable public right to secure such information from possibly unwilling official hands.'" *Id*. (quoting *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976)).

Under FOIA, "each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed, shall make the records promptly available to any person." 5 U.S.C. § 552(a)(3)(A). Notwithstanding FOIA's broad mandate for public disclosure of documents, it includes nine exemptions under which an agency may withhold documents. 5 U.S.C. § 552(b); *see Minier v. Cent. Intelligence Agency,* 88 F.3d 796, 800 (9th Cir. 1996). "These exemptions are 'explicitly exclusive'" in nature, meaning "an agency may withhold a document or portion thereof, *only if* the material at issue falls within one of the nine statutory exemptions." *Maricopa Audubon Soc. v. U.S. Forest Serv.*, 108 F.3d 1082, 1085 (9th Cir. 1997) (quoting *Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 151 (1989)) (emphasis added). Further, the Ninth Circuit has held that "in light of FIOA's purpose of encouraging disclosure, . . . 'its exemptions are to be interpreted narrowly.'" *Lahr*, 569 F.3d at 973 (quoting *Assembly of Cal. v. U.S. Dep't of Commerce*, 968 F.2d 916, 920 (9th Cir. 1992)).

A plaintiff in a FOIA action may be entitled to injunctive relief where the court finds that

---

response is justified. Because the Court presumes that the declaration is offered in good faith and Plaintiff does not challenge the FBI's *Glomar* response, the Court grants summary judgment in favor of the FBI on that question.

the agency's reliance on a FOIA exemption was improper or where the agency "'fails to demonstrate that it has conducted a search reasonably calculated to uncover all relevant documents.'" *Id.* at 986 (quoting *Zemansky v. EPA*, 767 F.2d 569, 571 (9th Cir. 1985)). An agency may demonstrate that it has conducted an adequate search by submitting "in good faith" "reasonably detailed, non-conclusory affidavits depicting adequate searches for the documents requested." *Zemansky*, 767 F.2d at 571, 574; *see also Our Children's Earth Found. v. Nat'l Marine Fisheries Serv.*, 85 F. Supp. 3d 1074, 1082 (N.D. Cal. 2015) (holding on summary judgment that agency was required to provide affidavits describing "'what records were searched, by whom, and through what process'" in order to demonstrate that it had conducted an adequate search for documents in response to FOIA request) (quoting *Lawyers' Comm. for Civil Rights v. U.S. Dep't of Treasury*, 534 F. Supp. 2d 1126, 1131 (N.D. Cal. 2008) (internal citation omitted)). "Affidavits submitted by an agency to demonstrate the adequacy of its response are presumed to be in good faith." *Hamdan v. U.S. Dep't of Justice*, 797 F.3d 759, 770 (9th Cir. 2015).

A FOIA requester who is dissatisfied with the response of a government agency may bring an action in federal district court asking the court to "enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." 5 U.S.C. § 552(a)(4)(B). Section 552(a)(4)(B) further provides that "[i]n such a case the court shall determine the matter de novo, and may examine the contents of such agency records in camera to determine whether such records or any part thereof shall be withheld under any of the exemptions set forth in subsection (b) of this section [listing FOIA exemptions], and the burden is on the agency to sustain its action." *Id.*; *see also Light v. Dep't of Justice*, 968 F. Supp. 2d 11, 23 (D.D.C. 2013) (to prevail in a FOIA action, the agency "must show that its search for responsive records was adequate, that any claimed exemptions actually apply, and that any reasonably segregable, non-exempt parts of records have been disclosed after redaction of exempt information").

FOIA cases are often decided on motions for summary judgment because the facts are rarely in dispute. *See Minier v. Cent. Intelligence Agency*, 88 F.3d 796, 800 (9th Cir. 1996). To prevail on a motion for summary judgment, the agency must demonstrate "'beyond material doubt

7

... that it has conducted a search reasonably calculated to uncover all relevant documents.'" *Our Children's Earth Found. v. Nat'l Marine Fisheries Serv.*, 85 F. Supp. 3d 1074, 1082 (N.D. Cal. 2015) (quoting *S. Yuba River Citizens League v. Nat'l Marine Fisheries Serv.*, No. CIV. S–06–2845 LKK/JFM, 2008 WL 2523819, at *11 (E.D. Cal. June 20, 2008) (quoting *Zemansky*, 767 F.2d at 571)). "If, however, the record leaves substantial doubt as to the sufficiency of the search, summary judgment for the agency is not proper." *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990).

### 2. OAG Response

#### a. Background

The search for records responsive to the OAG Request is described in a declaration by Daniel R. Castellano, a senior attorney with the OIP who supervises the Initial Request ("IR") staff of OIP who handle FOIA requests. Castellano Decl. ¶ 1. Castellano attests that his declaration is based on personal knowledge. *Id*. He describes with specificity the method that was used to search for responsive documents, including search terms. *Id*. ¶¶ 15-27. According to Castellano, OIP searched for responsive records in possession of OAG and the Departmental Executive Secretariat ("DES").[9] *Id*. The search for responsive documents in possession of OAG was initiated by sending a records search request to all staff members of OAG requesting that a search be conducted of "each staff members' files, including electronic files," which resulted in the identification by OIP of "one individual within [OAG] who might have potentially responsive email records." *Id.* ¶¶ 20, 22. OIP then used "a sophisticated electronic system which remotely searches through a given custodian's entire email collection" to search the user's email, using the search term "Vinton Frost" and a cut-off date of December 21, 2016. *Id.* ¶¶ 21, 23. That search turned up no responsive documents. *Id.* ¶ 23. With respect to the search for records held by DES, Castellano states that "OIP staff conducted comprehensive searches" for responsive records in DES's electronic databases using the search term "Vinton Frost" and ran the search using "two distinct search engines within the DES, ensuring that any records containing this term would have

---

[9] DES "is the official records repository of the Office of the Attorney General." *Id.* ¶ 24.

8

been retrieved from these keyword searches." *Id*. ¶ 26. Finally, Castellano attested that the methods used to search for responsive documents and the search terms used were "reasonably calculated to uncover all potentially responsive documents and that OIP searched all locations likely to contain responsive documents." *Id*. ¶ 27.

Plaintiff challenges the adequacy of the OAG's search on three grounds. First, he contends it was unreasonable to search only email. Plaintiff's Opposition at 1. Second, he argues that the statement in the Castellano Declaration that one individual at OAG was found to have responsive documents is inconsistent with something he was told by an OIP staff member, Christina Troiani, who allegedly told him that OIP was waiting for consent from the owners of *two* computers. *Id*. Third, Plaintiff believes that certain individuals would be most likely to have responsive documents by virtue of their positions at OAG and that failure to search their records shows that the search was inadequate. *Id*. at 2 & Ex. A.[10]

b. Discussion

The Court concludes that the detailed Castellano Declaration was submitted in good faith and is sufficient to show that OIP conducted a search that was "reasonably calculated to uncover responsive records." *See Zemansky*, 767 F.2d at 571. The affidavit provided specific information about the records that were searched, the method that was used and the search terms that were used. Castellano also attested that the methods and search terms that were used and the locations searched were reasonably calculated to uncover all responsive documents end explained how he determined where responsive records were likely to be found. In particular, Castellano states in his declaration that a search request inquiry was sent to *all* OAG staff and that the responses led OIP to conclude that responsive documents were likely to be found only in the email of one individual at OAG. As the Court finds nothing in the record that suggests OIP's conclusion was not based on a reasonable inquiry conducted in good faith, it rejects Plaintiff's assertion that the search was inadequate because OIP searched only the email of a single individual.

---

[10] The individuals and positions identified by Plaintiff are as follows: Attorney Generals Eric Holder and Loretta Lynch; Deputy Attorney General Sally Yates; Associate Attorney Generals Stuart Delery and William Baer; Assistant Attorney General, Criminal Division, Leslie Caldwell; and U.S. Attorneys for the Northern District of California Melinda Haag and Brian Stretch.

9

Plaintiff's allegation that he was told by a staff member that OIP was waiting for permission to search the computers of *two* individuals does not support a contrary conclusion. There are many benign explanations of this statement, including the possibility that this staff member was mistaken or Plaintiff misunderstood. Either way, this discrepancy does not warrant denial of summary judgment or further discovery as Defendant has supplied a detailed, good-faith declaration stating that only one individual at OAG was believed to hold responsive records.

Finally, Plaintiff's assertion that the search should have encompassed the records of certain specific individuals who he claims are likely to have responsive documents also does not render the search inadequate. It is well-established that "hypothetical assertions [that documents are likely to exist] are insufficient to raise a material question of fact with respect to the adequacy of the agency's search." *Meeropol v. Meese*, 790 F.2d 942, 952–53 (D.C.Cir.1986). Plaintiff has not established a sufficient predicate to warrant a court order requiring searches of these individuals' records.

Therefore, Defendant is entitled to summary judgment that the search for records responsive to the OAG Request was adequate and satisfied the requirements of FOIA.

### 3. FBI Response

#### a. Background

The search for records responsive to the FBI Request is described in the Declaration of David M. Hardy, who is the Section Chief of the Record/Information Dissemination Section ("RIDS") of the FBI's Records Management Division. Hardy Decl. ¶ 1. In this capacity, he supervises staff who respond to FOIA requests and he is familiar with the FBI's procedures in responding to such requests. *Id*.¶¶ 2-3. He also states that he is "aware of the FBI's response" to Plaintiff's FOIA request. *Id*. ¶ 3. Hardy provides a detailed declaration describing the FBI's Central Records System ("CRS") and the case management systems used to manage and search FBI records. *Id*. ¶¶ 12-18.

According to Hardy, the CRS consists of "applicant, investigative, intelligence, personnel, administrative, and general files compiled and maintained by the FBI." *Id*. ¶ 12. These files are organized according to "designated subject categories." *Id*. ¶ 13. The "general indices" to the

CRS are the index or 'key' to locating records within" the CRS. *Id* ¶ 14. There are two types of entries in the general indices: (1) "main entry" or "main file," which "pertains to records indexed to the main subject" of the file, such as the name of an individual, organization, or subject matter; and (2) "reference entry," or "cross-reference," which "pertains to records that merely mention . . . an individual, organization, or other subject matter contained in a 'main' file." *Id*.

The Universal Index ("UNI") is "the automated index of the CRS and provides all offices of the FBI a centralized, electronic means of indexing pertinent investigative information to FBI files for future retrieval via index searching." *Id*. ¶ 17. UNI consists of approximately 116.1 million searchable records. *Id*. In addition to the indices, Automatic Case Support ("ACS") and Sentinel are two case management systems used by the FBI to locate, retrieve, and maintain information. *Id.* ¶ 16, 18. ACS is the integrated case management system that has been used for FBI records since 1995. *Id*. ¶ 16. Sentinel is "the FBI's next generation case management system effective FBI-wide on July 1, 2012" and "provides a web-based interface to FBI users." *Id*. ¶ 18.

In response to Plaintiff's request, the FBI conducted an initial search on November 28, 2016, searching only main file records, using UNI and Sentinel, and using the terms "Vinton Pomeroy Frost II," "Vinton Pomeroy Frost," "Vinton P. Frost," and "Vinton Frost." *Id*. ¶ 20. The search included a phonetic breakdown of search terms to catch alternative spellings. *Id*. This search turned up no responsive main file records indexed under Plaintiff's name. *Id.* The search *did* reveal that Plaintiff's name was "indexed as a reference in one control file," but the FBI did not review the reference because "the standard protocol for RIDS analysts in the administrative phase is to only review the references at the specific direction of the requester." *Id.*

After receiving notice of Plaintiff's lawsuit, the FBI conducted an additional search on August 17, 2017. *Id.* ¶ 21. This search used the UNI application of ACS as well as a Sentinel index search "to confirm [the FBI's] previous search results and to identify any potentially responsive cross-reference files." *Id.* ¶ 21. The same parameters and search terms were used in conducting this second search, but the search now included cross-references in addition to the main files. *Id.* Apparently, this second search was conducted pursuant to a policy whereby in the case of FOIA requests involving records that may have been generated after July 1, 2012, the FBI

11

performs "an overlapping search of ACS via the UNI application and a Sentinel index search . . . at the litigation stage to ensure the adequacy of the CRS index search." *Id*. ¶ 19. As a result of this second search, the FBI identified various cross-reference serials from control file number 62-SF-0, a catch-all file for the San Francisco Field Office which houses a variety of documents not related to a specific investigative file, including Visitor Information Forms, complaints and letters from the public, and incident reports. *Id*. ¶ 21 & n.11.

Hardy further states in his declaration that RIDS contacted the San Francisco Field Office and confirmed that that "any documents Plaintiff provided to the field office were imported to the control file and to clarify the procedures Duty Agents follow when receiving documents from a walk-in visitor to the filed office." *Id*. ¶ 23. According to Hardy, the Chief Division Counsel of the San Francisco Field Office confirmed that any documents that a walk-in visitor leaves with the receptionist or Duty Officer are uploaded into Sentinel. *Id*.

As discussed above, the documents found as a result of the second search (except duplicates) were produced, with some redactions, on September 20, 2017. According to Hardy, the FBI's search of CRS was reasonably calculated to locate the records requested by Plaintiff because: 1) CRS is the principal records system used by the FBI to index information about individuals, organizations, events and other subjects of investigative interest for future retrieval; and 2) records referencing Plaintiff could reasonably be expected to be found in CRS. *Id*. ¶ 22.

Plaintiff contends Defendant is not entitled to summary judgment that the FBI conducted an adequate search. First, he argues that the FBI has mischaracterized its inquiry to the San Francisco Field Office, stating in its motion that the "FBI official conducting the search followed up with the San Francisco Field Office to confirm the location of any other documents about Plaintiff," Defendant's Motion at 10, whereas the Hardy Declaration states only that the official confirmed that "any documents Plaintiff provided to the field office were imported to the control file and . . . clarif[ied] the procedures Duty Agents follow when receiving documents from a walk-in visitor to the filed office," Hardy Decl. ¶ 23. Plaintiff's Motion at 2. Plaintiff asks the Court to order that the FBI inquire of the San Francisco and San Jose field offices whether information and/or investigations of Plaintiff were stored under other key words and to search any

12

local file systems and file-sharing devices "like S-drives or whatever 'OST' (on Exhibit B)[11] may refer to using Plaintiff's name" and those key words. *Id*. at 3. Plaintiff further requests that the Court require that Mr. Hardy provide a new declaration describing the FBI's efforts to search for responsive documents at the San Francisco Field Office. *Id*.[12]

Plaintiff also argues that the FBI should have searched for documents specifically related to the "judiciary inv[estigation]" referenced in Exhibit B once that document was found. *Id.* He asks the Court to order that the FBI conduct a search that is more reasonably calculated to uncover responsive documents by using Exhibit B, and to "use 'ICM' 'ECF' and 'UI' search database engines in a cross-reference of keywords which are the redacted words describing the federal judiciary investigation . . . and Plaintiff's name." *Id.*

Next, Plaintiff asks the Court to order a search of Leslie Caldwell's "e-mail and computer hard-drive" and of "official meeting notes made by the deputy and associate attorneys general in meetings with Leslie Caldwell. *Id.* In Exhibit A to Plaintiff's Opposition and Motion for Summary Judgment, a "DOJ Org. Chart for Criminal Proceedings" lists Leslie Caldwell as "Assistant Attorney General Criminal Division."

Finally, Plaintiff asks for a declaration "regarding which officials were recipients of requests for consent of search of their computers."

### b. Discussion

As a preliminary matter, the Court finds that the initial search conducted by the FBI was patently inadequate. The FBI offers no explanation for limiting its search to main file records and does not provide an affidavit attesting that the choice was based on a determination that such a search was reasonably likely to locate responsive records. Instead, this limited search appears to have been based on a policy of waiting until a FOIA requester initiates litigation to search cross-

---

[11] Exhibit B to Plaintiff's Opposition and Summary Judgment Motion is a copy of one of the documents produced to Plaintiff by the FBI and carries the notation "ADMINISTRATIVE INQUIRY: FED. JUDICIARY INV/ [REDACTED] MAINTAIND BY: RECEPTION OST/SMALL FILE CABINET."

[12] Plaintiff also contends the Hardy Declaration is improper because it was submitted without a signature page. That error was remedied, however, when Defendant filed the signature page for the Hardy Declaration. *See* Docket No. 67.

13

references. As the obligations imposed on agencies under FOIA do not change when litigation is initiated, this policy appears to be in conflict with the FBI's obligations under FOIA. Thus, were the adequacy of the search based on the FBI's pre-litigation conduct, it would not be entitled to summary judgment as to the adequacy of its search.

However, courts who have addressed the question of whether the failure to conduct an adequate search until after the initiation of litigation can support the denial of summary judgment in favor of the agency have concluded that it cannot. For example, in *Sellers v. U.S. Dep't of Justice*, the court rejected the FOIA plaintiff's objection based on the timeliness of the FBI's search for responsive documents, finding that even if it were true that the FBI did not conduct an adequate search until after the plaintiff filed a lawsuit, "a delay in an agency's search for records does not render the search inadequate." 684 F. Supp. 2d 149, 157 (D.D.C. 2010) (citing *Perry v. Block*, 684 F.2d 121, 125 (D.C.Cir.1982) ("However fitful or delayed the release of information under the FOIA may be, once all requested records are surrendered, federal courts have no further statutory function to perform.")); *see also Nance v. F.B.I.*, 845 F. Supp. 2d 197, 201–02 (D.D.C. 2012) ("If the FBI demonstrates that it conducted an adequate search with proper redactions at some point prior to filing for summary judgment, [Plaintiff's] distinction between pre-suit and post-suit searches becomes irrelevant."); *Landmark Legal Found. v. E.P.A.*, 272 F. Supp. 2d 59, 62 (D.D.C. 2003) ("The only question for summary judgment is whether the agency finally conducted a reasonable search, and whether its withholdings are justified. When exactly a reasonable search was conducted is irrelevant."). Moreover, courts have found that an earlier inadequate search followed by a later adequate search should not be relied upon as a basis for finding that the agency has not acted in good faith as such an approach would provide a disincentive for agencies to correct their mistakes and would punish flexibility while rewarding intransigence. *See Military Audit Project v. Casey*, 656 F.2d 724, 754 (D.C. Cir. 1981). Therefore, the question before the Court is whether the search conducted *after* Plaintiff filed this action was adequate.[13] The Court finds that the Hardy Declaration is too vague and conclusory to

---

[13] The Court notes that while the timing of a FOIA response does not, by itself, render the agency's search inadequate, "in adopting the FOIA, Congress was specifically concerned that

14

answer this question.

"An agency has discretion to conduct a standard search in response to a general request, but it must revise its assessment of what is 'reasonable' in a particular case to account for leads that emerge during its inquiry." *Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 28 (D.C. Cir. 1998), as amended (Mar. 3, 1999). Thus, "the court evaluates the reasonableness of an agency's search based on what the agency knew at its conclusion rather than what the agency speculated at its inception." *Id*. In *Campbell*, the court found that "the FBI started with the reasonable assumption that only a CRS review would be necessary, but that assumption became untenable once the FBI discovered information suggesting the existence of documents that it could not locate without expanding the scope of its search." *Id*. Under those circumstances, the court of appeals found that the district court had erred in finding on summary judgment that the FBI had conducted an adequate search, rejecting the FBI's assertion that it was not required to search a separate electronic surveillance index (ELSUR) because such a search was not specifically requested in the original FOIA request. *Id*. The court in *Campbell* also rejected the FBI's assertion that a more extensive search was not required because the existence of additional responsive documents was speculative, explaining that "in any FOIA request, the existence of responsive documents is somewhat 'speculative'" but "the proper inquiry is whether the requesting party has established a sufficient predicate to justify searching for a particular type of record." *Id*.

Here, Plaintiff provided additional details in support of his request, in his December 9, 2016 letter, which the FBI had an obligation to" incorporate . . . in crafting the scope of its search." *Negley v. F.B.I.*, 658 F. Supp. 2d 50, 57 (D.D.C. 2009). Further, the search of cross-references provided additional leads when documents were turned up in the control file 62-SF-0.

---

agencies would delay in responding to requests, and as a result 'an agency's failure to comply with the FOIA's time limits is, by itself, a violation of the FOIA.'" *Our Children's Earth Found. v. Nat'l Marine Fisheries Serv.*, 85 F. Supp. 3d 1074, 1089 (N.D. Cal. 2015) (quoting *Gilmore v. U.S. Dep't of Energy*, 33 F.Supp.2d 1184, 1187 (N.D.Cal.1998); and citing *Long v. IRS*, 693 F.2d 907, 910 (9th Cir.1982) (concluding that an agency's unreasonable delay in disclosing non-exempt documents violated the FOIA and "courts have a duty to prevent those abuses")). Plaintiff has not asserted a claim based on the agency's failure to timely respond to his requests. Therefore, the Court does not reach whether the FBI's policy of waiting to be sued to conduct an adequate search warrants injunctive relief.

*See* Hardy Decl. ¶ 21. To the extent that the FBI official conducting the search made some effort to incorporate the new information by contacting the San Francisco Field Office, the Court cannot determine from the declaration provided by the FBI that its search efforts were reasonable. While Hardy's declaration states that any documents Plaintiff may have given to the San Francisco Field Office would have been uploaded into Sentinel such that they would have been uncovered by the FBI's searches, it does not address whether documents that may have been generated by the San Francisco Field Office *about* Plaintiff would have been uncovered by its search. In contrast to the declaration supplied on behalf of OAG, for example, Hardy does not state that he inquired with staff in the San Francisco Field Office to determine whether any of them were likely to have responsive documents, what form such documents might take or where they might be stored. Consequently, it is unclear whether additional searches might have been warranted, either using different search terms or searching different records.

The FBI is correct that Plaintiff is not entitled to dictate the particular record systems to be searched, search engines, or search terms that should be used. *See Mobley v. C.I.A.*, 806 F.3d 568, 582 (D.C. Cir. 2015) ("a request for an agency to search a particular record system—without more—does not invariably constitute a 'lead' that an agency must pursue."). Plaintiff has not, for example, established that the FBI failed to conduct a reasonable search because it failed to search the records of Leslie Caldwell, or because it did not search using the "'ICM' 'ECF' and 'UI' Search database engines." The FBI must, nonetheless, provide sufficient details about the search it conducted to show that it was reasonably likely to uncover responsive documents held by the San Francisco Field Office.[14] Hardy's declaration does not do so.

Plaintiff seeks leave to conduct discovery in the form of "reasonably calculated searches

---

[14] The Court notes that as to one possible "lead," the redacted name on the document produced as Frost-1, referencing a judiciary investigation, the FBI states in its brief that the redacted name refers to a third party and that because the judiciary investigation was about a third party (and not Plaintiff) it was not required to pursue that lead. *See* Defendant's Opposition at 8. The Hardy Declaration does not say that the judiciary investigation was about a third party, however. To the contrary, it says the third parties whose names were redacted were "*not* of investigative interest to the FBI." Hardy Decl. ¶ 38 (emphasis added). Further, both the Hardy Declaration and the Vaughn Index submitted by Defendant in this case reflect that the names of *both* third parties and FBI agents and/or staff were redacted from this document. It is unclear whether the names that were redacted might provide a lead as to where or how to locate responsive documents.

repairing" the alleged deficiencies discussed above. However, "discovery is generally appropriate only when the plaintiff has raised a sufficient question as to the agency's good faith." *Schoenman v. F.B.I.*, No. CIV.A. 04-2202CKK, 2009 WL 763065, at *27 (D.D.C. Mar. 19, 2009) (citation omitted). "Where an agency's declarations are deficient, courts generally will request that an agency supplement its supporting declarations rather than order discovery." *Id*. (internal quotation and citation omitted); *see also People for the Ethical Treatment of Animals, Inc. v. Bureau of Indian Affairs*, 800 F. Supp. 2d 173, 178 (D.D.C. 2011) ("in a FOIA case, even if defendant had failed in obtaining summary judgment because of an inadequate search, it does not necessarily follow that plaintiff prevails. Rather, the usual remedy is for the Court to remand to the agency to expand its search or to provide more detailed declarations regarding the scope of the search"). The Court finds that Plaintiff has not raised a sufficient question as to the FBI's good faith to warrant discovery. Rather, the Court will hold this matter in abeyance to permit the FBI to provide a more detailed declaration addressing its search efforts as they relate to responsive records that may be held by the San Francisco Field Office.

### C. CONCLUSION

For the reasons stated above, Plaintiff's Motion for Defendant's Certification is DENIED. Defendant's Summary Judgment Motion is GRANTED and Plaintiff's Summary Judgment Motion is DENIED as to the adequacy of the response to the OAG Request. The Court also GRANTS summary judgment in favor of Defendant that the exemptions claimed in connection with the FBI's response to Plaintiff's FOIA request were proper. The Court HOLDS in ABEYANCE the question of whether the FBI conducted an adequate search for responsive records to allow for supplementation of the record. Defendant shall supply a supplemental declaration providing detailed information showing that the search it conducted was reasonably calculated to uncover any responsive records held by the FBI's San Francisco Field Office, to be filed no later than **May 18, 2018.** Plaintiff may file a responsive brief no later than **June 8, 2018**. Should the Court determine that a hearing is necessary it will notify the parties. Otherwise, the

1 | remaining outstanding issue will be decided without a hearing.

2 | **IT IS SO ORDERED.**

4 | Dated: April 4, 2018

JOSEPH C. SPERO
Chief Magistrate Judge